IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALFONSO SANCHEZ,** : | |
| : | |
| Petitioner : | CIVIL NO. 1:CV-09-01350 |
| : | |
| v. : | (Judge Rambo) |
| : | |
| **WARDEN JERRY C. MARTINEZ,** : | |
| : | |
| Respondent : | |

## **M E M O R A N D U M**

Before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, filed by petitioner Alfonso Sanchez ("Sanchez"), an inmate currently incarcerated at the Low Security Correctional Institution at Allenwood ("LSCI-Allenwood") in White Deer, Pennsylvania. (Doc. 1.) Sanchez alleges that his constitutional rights were violated in the context of a disciplinary hearing. For the reasons that follow, the petition will be denied.

**I.     Background**

On July 26, 2007, at 9:45 a.m., during a shake down of cell 202 in Unit 3B of LSCI-Allenwood, Senior Officer R. Arnold discovered a homemade tattoo needle under the lid of a resealed laundry detergent box next to Sanchez's locker. (Doc. 8-2 at 6-8, Incident Report.) When Officer Arnold returned to his office, Sanchez

approached him and stated, "That is mine, it is a tattoo needle, there is no need to get my cell mate involved, it is mine." (Doc. 8-2 at 6.)

On July 27, 2007, an incident report was delivered to Sanchez charging him with "possession, manufacture, or introduction of a hazardous tool" in violation of Section 108 of the Bureau of Prisons' ("BOP") disciplinary code. (*Id*. at 6-8.) An investigation was conducted on that same day. (*Id*. at 7.) On July 30, 2007, the Unit Disciplinary Committee ("UDC") held a hearing to review the incident report. (*Id*. at 6-7.) At that time, Sanchez stated that the tattoo needle "is mine, I had it for a long time." (*Id*. at 6.) After reviewing the matter, the UDC referred it to the Disciplinary Hearing Officer ("DHO") for a further hearing. (*Id*. at 9-10, Notice of Disciplinary Hearing Before DHO.) Subsequently, on July 30, 2007, Sanchez signed an advisement of rights form, indicating that he understood his rights. (*Id*. at 10.) He also requested staff representation. (*Id*. at 9.)

A hearing was held on August 9, 2007. (*Id*. at 3-5, DHO Report.) At the hearing Sanchez was informed that his requested staff representative, Chaplain Beadle, declined or could not appear. (*Id*. at 3.) Sanchez was given the option to postpone the hearing in order to obtain another representative, but instead he elected to waive his right to staff representation and proceed with the hearing. (*Id*.) No

2

procedural irregularities occurred and Sanchez presented no documentary evidence. (*Id*.) The DHO did review a photograph of the needle and the laundry detergent box. (*Id*. at 4.) Sanchez also provided the following statement, as noted by the DHO, "I had the tattoo needle for a while. I brought it with me from Ray Brook." (*Id*. at 3.)

After the hearing, the DHO issued a decision, dated August 14, 2007, in which he found credible

> the information provided by the staff members involved in this case, as they derived no known benefit by providing false information and by virtue of their position, are obligated to be truthful. The DHO reviewed the photograph and identified the needle as the type commonly used by the inmate population to do tattoos on other inmates. The DHO also noted Sanchez' admission that the tattoo needle was his. The DHO finds the charge to be substantiated based on some evidence and Sanchez' admission.

(*Id*. at 4.) The DHO concluded that the "greater weight of the evidence/some facts" supported the finding that Sanchez had been in possession of a hazardous tool in violation of Code 108. (*Id*.) Sanchez was sanctioned with forty-five (45) days of disciplinary segregation, disallowance of forty (40) days of good conduct time, and loss of commissary privileges for six (6) months. (*Id*. at 5.)

On August 29, 2007, Sanchez filed a request for administrative remedy with the Northeast Regional Office, appealing the DHO's August 14, 2007 decision. (Doc. 8-2 at 13.) In his appeal, Sanchez stated that this was his first incident report and that

3

the sanctions imposed were too harsh. (Doc. 2-2 at 2.) He sought to have his commissary privileges restored. (*Id*.) The Northeast Regional Office denied Sanchez's appeal on September 28, 2007. (*Id*.) In that response, the Regional Director noted that DHO decision was based on the greater weight of the evidence and was consistent with the severity level of the prohibited act. (*Id*.) The Regional Director also noted that the sanctions imposed were not disproportionate to Sanchez's misconduct. (*Id*.) In addition, the Regional Director advised Sanchez that if he was dissatisfied with the response, he could appeal to the BOP's General Counsel. (*Id*.) In his traverse, Sanchez asserts that he did file an appeal with the General Counsel, but has received no response.[1] (Doc. 9 at 1.)

Following his administrative appeals, Sanchez filed the instant petition challenging the sufficiency of the evidence relied upon by the DHO and the severity of the imposed sanctions. (Doc. 1.)

**II. Discussion**

The BOP disciplinary process is fully outlined in the Code of Federal Regulations, Title 28, Sections 541.10 through 541.23. These regulations dictate the

---

[1] Sanchez claims that his Unit Team at LSCI-Allenwood told him that he should assume that no response from the General Counsel is a denial of his appeal. (Doc. 9 at 1.)

manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.14. Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.14(b).

Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.15. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a DHO for a hearing. 28 C.F.R. § 541.15. Because Sanchez was charged with an offense in the greatest severity category, the matter was referred for a disciplinary hearing.

Greatest category offenses carry a possible sanction of loss of good conduct time credits, *inter alia*. 28 C.F.R. § 541.13. When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing, (2) an opportunity to call witnesses and present documentary

5

evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. *See Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974).

Further, despite the absence of a statutory exhaustion requirement attached to § 2241, courts have consistently required a petitioner to exhaust administrative remedies prior to bringing habeas claims under § 2241. *Speight v. Minor*, 245 F. App'x 213, 215 (3d Cir. 2007); *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion promotes a number of goals: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761-62 (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)). Courts, however, have excused exhaustion when it would not promote these goals. *See, e.g., Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998) (Roth, J., concurring) (exhaustion excused upon petitioner demonstrating futility); *Lyons v. United States*

*Marshals*, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion excused when agency actions clearly and unambiguously violate statutory or constitutional rights).

In order for a federal prisoner to exhaust his administrative remedies, he must comply with the prison grievance process set forth in the Code of Federal Regulations. *See* 28 C.F.R. §§ 542.10-.23; *Lindsay v. Williamson*, No. 1:CV-07-0808, 2007 WL 2155544, at *2 (M.D. Pa. July 26, 2007). An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. *Id*. at § 542.14(a). If dissatisfied with the response, he may then appeal an adverse decision to the Regional Office and the Central Office of the BOP. *Id*. at §§ 542.15(a) and 542.18. No administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office. *See Sharpe v. Costello*, No. 08-1811, 2008 WL 2736782, at *3 (3d Cir. July 15, 2008).

In the response to the instant habeas petition, Respondent claims that the petition should be dismissed because Sanchez failed to complete the BOP's administrative appeals process prior to filing in this court. Sanchez, however,

contends that he did in fact provide all three levels of the BOP administrative remedy process the opportunity to address his issues, but the final level, the General Counsel, never responded to his request. Because the court concludes that the instant petition is without merit, it need not determine whether to excuse Sanchez's failure to exhaust.

### A. Sufficiency of the Evidence

Sanchez contests the sufficiency of the evidence. (Doc. 1 at 5.) The DHO's decision is required to be supported by some evidence in the record. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *see also Young v. Kann*, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings). The standard is met if there was a modicum of evidence from which the conclusion of the tribunal could be deduced. *See Hill*, 472 U.S. at 455. Determining whether this standard is met does not require examination of the entire record, independent assessment of witness credibility, or weighing of the evidence; the relevant question is whether there is evidence in the record that supports the DHO's conclusion. *See id*.

Reviewing the evidence, as recited in the background section, *supra*, the court finds that there was "some evidence" to support the DHO's decision. The statement

of Officer Arnold and Sanchez's own statements made to Officer Arnold and the DHO that he did in fact possess the tattoo needle confirm that the DHO acted with a sound evidentiary basis. *Hill*, 472 U.S. at 455-56. Thus, the petition will be denied with respect to Sanchez's claim that there was insufficient evidence to support the DHO's decision.

### B. Sanctions

Sanchez also challenges the severity of the sanctions imposed by the DHO. Specifically, Sanchez claims that the sanctions imposed by the DHO should be modified because the offense committed (possession of a tattoo needle) has been re-categorized by the BOP as a "moderate category offense," Code 305, rather than a "greatest category offense," Code 108. (Doc. 1 at 5.)

In a supplemental response to the petition, Respondent counters that the BOP has not re-categorized the offense, "possession, manufacture, or introduction of a hazardous tool" in violation of Section 108 of the BOP disciplinary code, and therefore the facts relied upon by the DHO support the disciplinary decision and imposition of appropriate sanctions. (Doc. 11 at 2.) In support, Respondent attaches as exhibits Program Statement 5270.07, Inmate Discipline and Special Housing Units, and the Change Notices for that Program Statement. (Doc. 11-2, Exs. 2 & 3.)

9

Initially, the court notes that Program Statement 5270.07 describes prohibited acts and the disciplinary severity scale. (Doc. 11-2, Ex. 3, 27-38.) The prohibited acts listed under Code 108, a "greatest category offense," are as follows: "Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade)." (*Id*. at 29.) The prohibited act listed under Code 305, a "moderate category offense," is as follows: "Possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels." (*Id*. at 34.) Further, the Change Notices to that Program Statement reveal no changes to the prohibited acts as Sanchez claims in his petition. (Doc. 11-2, Ex. 2, 7-25.)

In his reply, Sanchez reiterates his disagreement with the classification of his offense as a Code 108 violation. (Doc. 12.) Specifically, he does not agree that a tattoo needle can be classified as a "hazardous tool." (*Id*. at 1.) However, he provides no evidence to the contrary. As a result, the court will review the sanctions imposed by the DHO for the offense found, a "greatest category offense."

The sanctions that may be imposed upon a finding of guilt of a "greatest category offense" include, *inter alia*, forfeiting earned statutory good conduct time or

10

up to 100% of non-vested good conduct time, up to sixty days disciplinary segregation, and loss of privileges. 28 C.F.R. § 541.13. Upon review, Sanchez is not entitled to relief on this ground as the sanctions imposed upon him were within the limits prescribed in this regulation.

Further, these penalties (forfeiture of good conduct time, disciplinary segregation, and loss of privileges) plainly fall "within the expected perimeters of the sentence imposed by a court of law," and do not "[impose] atypical and significant hardship on [petitioner] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484-85 (1995). Therefore, because the sanctions imposed in this case fall well within the regulatory scheme for such disciplinary infractions, Sanchez's argument is without merit.

### III.    Conclusion

For the above stated reasons, the petition for writ of habeas corpus will be denied.

An appropriate order will issue.

                                       s/Sylvia H. Rambo
                                        United States District Judge

Dated: November 6, 2009.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALFONSO SANCHEZ,** | : | |
| | : | |
| Petitioner | : | CIVIL NO. 1:CV-09-01350 |
| | : | |
| v. | : | (Judge Rambo) |
| | : | |
| **WARDEN JERRY C. MARTINEZ,** | : | |
| | : | |
| Respondent | : | |

# O R D E R

**AND NOW**, this 6th day of November, 2009, upon consideration of the petition for writ of habeas corpus (Doc. 1), and for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1) The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2) The Clerk of Court is directed to **CLOSE** this case.

                                                      s/Sylvia H. Rambo
                                                      United States District Judge

.